IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IESHA PATTON, | § | |
| | § | |
| *Plaintiff,* | § | 5:24-CV-00839-FB-RBF |
| | § | |
| vs. | § | |
| | § | |
| PROCOLLECT, INC.,  COPERNICUS | § | |
| REALTY, LLC, | § | |
| | § | |
| *Defendants.* | § | |
| | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns Defendant ProCollect, Inc's Motion to Dismiss, which urges a lack of standing to sue. *See* Dkt. No. 33; *see also* Dkt. Nos. 34 (Response), 35 (Reply), 36 (Sur-Reply). All pretrial matters in this action have been referred by the District Judge for resolution by the Magistrate Judge, pursuant to Rule CV-72 and Appendix C to the Local Rules for the United States District Court for the Western District of Texas. *See* Dkt. No. 5. Authority to enter this recommendation stems from 28 U.S.C. § 636(b)(1)(B).

For the reasons set forth below, Defendant ProCollect, Inc.'s Motion to Dismiss, Dkt. No. 33, should be **DENIED WITHOUT PREJUDICE**.

### Factual and Procedural Background

Plaintiff Iesha Patton, proceeding pro se, alleges violations of the Fair Debt Collection Practices Act ("FDCPA") and the Texas Debt Collection Act ("TDCA") by Defendants ProCollect, Inc. ("ProCollect") and Copernicus Realty, LLC ("Copernicus") (collectively "Defendants"). *See* Dkt. No. 32 ("Am. Compl.").

In July 2023, Patton noticed tradelines, which are entries on a credit report, from ProCollect "allegedly owed to FAMSA TX," a non-party company. Am. Compl. ¶¶ 25-27. According to Patton, she then sent ProCollect a "dispute/debt validation letter" to validate and confirm the purported debt reflected in the tradelines. *Id*. ¶ 31. In response to Patton's requested validation, on August 30, 2023, ProCollect sent a letter validating the debt. *Id*. ¶ 32. But, according to Patton, ProCollect also "sought to collect [the] balance of $833.14" for charges that had accrued in 2018. *Id*. ¶¶ 27, 32, 33. Patton attached the validation letter to her Response to Defendant's Original Motion to Dismiss. *See* Dkt. No. 26. The letter states:

> Attached is the information you requested. Our client [FAMSA (TX)] contends that this is a true and valid debt and has enlisted our help in recovering their loss. To avoid further collection efforts please forward payment in full by return mail immediately.
>
> This is an attempt to collect a debt. Any information obtained will be used for that purpose.

*See id.* at 13.

The letter, says Patton, fails to inform Patton that the 4-year limitations period expired on her $833.14 debt or that a partial payment on the time-barred debt could restart the applicable limitations period. *See* Am. Compl. ¶ 54.

Patton's Amended Complaint asserts claims against Defendants for violations of (1) FDCPA § 1692(e), which prohibits the use of false, deceptive, or misleading representations or means in connection with the collection of any debt; (2) FDCPA § 1692(f), which prohibits the use of any unfair or unconscionable means to collect any debt; and (3) TDCA Tex. Fin. Code § 392.403(a)(2), which prohibits the use of false, deceptive, or misleading representations or means in connection with the collection of any debt. *See* Am. Compl. Patton alleges that the letter caused her to "suffer[] emotional distress, anxiety, fear, embarrassment, and mental

anguish . . . including the false impression that she could be sued on time-barred debts and the pressure to pay debts she did not legally owe." *Id*. ¶ 6.

Defendant ProCollect filed a Motion to Dismiss for Lack of Jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1). *See* Dkt. No. 33 ("Mot." or "Motion"). In it, ProCollect argues Patton lacks standing to sue because she did not suffer a cognizable legal injury. *See id.* Patton timely filed a response, *see* Dkt. No. 34, and ProCollect timely filed a reply, *see* Dkt. No. 35. Patton subsequently filed a document labeled as a Response to ProCollect's Reply, *see* Dkt. No. 36, which the Court interprets as Patton's Sur-Reply.

**Analysis**

Dismissal is proper under Rule 12(b)(1) "when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citing Fed. R. Civ. P. 12(b)(1)). As the party asserting jurisdiction, "the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citation omitted). In ruling on a motion under Rule 12(b)(1), the Court "has the power to dismiss for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Freeman v. United States*, 556 F.3d 326, 334 (5th Cir. 2009) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)). "Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Williamson*, 645 F.2d at 412-13 (citation omitted). "In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence

3

of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.* at 413 (citation omitted). "[A] motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of [the] claim that would entitle plaintiff to relief." *See Ramming*, 281 F.3d at 161 (citing *Home Builders Ass'n of Miss., Inc.*, 143 F.3d at 1010).

## A.    The Court Applies Familiar Standards to Determine Whether Patton Has Standing.

"Standing is a component of subject matter jurisdiction." *HSBC Bank USA, N.A. as Tr. for Merrill Lynch Mortg. Loan v. Crum*, 907 F.3d 199, 202 (5th Cir. 2018). It identifies "those disputes which are appropriately resolved through the judicial process." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (quotation and citation omitted). To have standing to sue, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant[s], and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citations omitted). To satisfy the injury-in-fact requirement, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id*. at 339. (quoting *Lujan*, 504 U.S. at 560). As the party invoking federal jurisdiction, the plaintiff bears the burden on each of these elements. *Id.*

A concrete injury is "real, and not abstract." *Id.* at 340 (internal quotation omitted). This standard includes "traditional tangible harms, such as physical harms and monetary harms," as well as "[v]arious intangible harms," such as "reputational harms, disclosure of private information, and intrusion upon seclusion." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021) (citations omitted); *see also Spokeo*, 578 U.S. at 340-42. The mere "violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact," *Spokeo*,

4

578 U.S. at 342, but "deprivation of a procedural right without some concrete interest that is affected by the deprivation . . . is insufficient to create Article III standing." *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009).

"[A] purported injury is not concrete for purposes of Article III unless it has a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, 45 F.4th 816, 821 (5th Cir. 2022) (quoting *TransUnion LLC*, 594 U.S. at 424) (internal quotation omitted). This standard "do[es] not require an exact duplicate." *TransUnion LLC*, 594 U.S. at 433. But "federal courts" may not "loosen Article III based on contemporary, evolving beliefs about what kinds of suits should be heard in federal courts." *Id*. at 425.

The Fifth Circuit has emphasized that the focus of this standing inquiry is on the "type[] of harms protected at common law, not the precise point at which those harms become actionable." *Cranor v. 5 Star Nutrition, LLC*, 998 F.3d 686, 693 (5th Cir. 2021). "[A] plaintiff doesn't need to demonstrate that the *level* of harm he has suffered would be actionable under a similar, common-law cause of action." *Perez*, 45 F.4th at 822 (5th Cir. 2022) (emphasis added). "But [a plaintiff] does need to show that the *type* of harm [ ] suffered is similar in kind to a type of harm that the common law has recognized as actionable." *Id*. (emphasis added).

**B.      Patton's Purported Injuries Are Sufficient to Confer Article III Standing.**

The issue here is whether Patton suffered a concrete injury, due to the letter sent to her, that is sufficient to support her standing to sue. *See* Dkt. No. 26 at 13. The Fifth Circuit has made clear that an alleged violation of the FDCPA alone is insufficient to qualify as concrete injury. *See Perez*, 45 F.4th at 823 (5th Cir. 2022) (citing *Spokeo*, 578 U.S. at 341). It is similarly undisputed

that the mere "risk of future harm" is insufficient to confer standing in a suit for damages. *Id.* at 824 (citing *TransUnion*, 594 U.S. 413).

Beyond these straightforward precepts, the law on standing under the FDCPA becomes more complicated. In *Perez*, for example, the Fifth Circuit indicated that a communication that conveys some kind of implied threat of legal action or otherwise independently causes harm to the recipient could be sufficient to confer standing. *Id.* at 824 (acknowledging in *dicta* that a plaintiff "can sue for damages if the risk materializes or causes a separate injury-in-fact, such as emotional distress"). Then, in a subsequent decision, the Fifth Circuit explicitly recognized that "'fear, anxiety, and emotional distress' after receiving 'intimidating' and 'misleading' [ ] letters" was sufficient to establish concrete injury in this context. *Calogero v. Shows, Cali & Walsh LLP*, 95 F.4th 951, 958 (5th Cir. 2024) (stating, "'emotional distress' is a traditional harm that satisfies *TransUnion*'s concreteness requirement" and quoting *Perez*, 45 F.4th at 824).

Meanwhile, the Seventh Circuit has reasoned that mere "emotional distress arising from [ ] concern about being sued for the debt" is insufficient to establish concrete injury because "worry, like confusion, is insufficient to confer standing." *Pierre v. Midland Credit Mngmt., Inc.*, 29 F.4th 934, 939 (7th Cir. 2022) (citations omitted). And the Eleventh Circuit likewise has found no standing in similar circumstances, reasoning that the harms the FDCPA was intended to protect against are "a far cry from whatever injury one may suffer from receiving in the mail a misleading communication that fails to mislead." *See Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 999 (11th Cir. 2020).

Dissenting judges and lower courts have noted the tension in the case law. *See e.g.*, *Pierre*, 29 F.4th at 953, 953 (Hamilton, J., dissenting) (lamenting the rejection of allegations of "anxiety, stress, mental anguish and emotional distress" as a basis for Article III standing, and noting the

existing circuit split on the issue) (citation omitted). One district court in this Circuit reconciled the cases by noting that the disagreement doesn't appear to involve "whether emotional harm can qualify *at all* but whether certain types of emotional harms—such as stress and confusion, which are seen as relatively insignificant—have a suitable common law analogue." *Vazzano v. Receivable Mgmt. Serv., LLC*, 621 F.Supp.3d 700, 709 (N.D. Tex. Aug. 12, 2022) (emphasis in original) (citing *Laufer v. Arpan, LLC*, 29 F.4th 1268 (11th Cir. 2022) *rev'd on other grounds*, and applying *TransUnion* to conclude that "frustration and humiliation" do not have a "close relationship" to intentional or negligent infliction of emotional distress.). The Court in *Vazzano* noted that on one end of the spectrum are certain types of minor emotional harms—such as stress, confusion, frustration, or worry. These may not have suitable common law analogues because allegations of such harms are seen as relatively insignificant. *See id.* Ultimately, *Vazzano* didn't rely on alleged emotional harm to confer standing, because the plaintiff's allegation that she felt "harassed" by the debt-collection letter was sufficiently analogous to the tort of intrusion upon seclusion. *See id.* Even still, the implication created by *Vazzano*'s approach is that certain emotional harms caused by FDCPA violations could indeed support standing so long as those harms are sufficiently severe as to have a common law analogue.

Patton's allegations of "emotional distress, anxiety, fear, embarrassment, and mental anguish," *see* Am. Compl. ¶ 6, in conjunction with the contents of the letter requesting payment in full, *see* Dkt. No. 26 at 13, are sufficient for the Court to conclude that Patton has alleged a concrete injury caused by ProCollect's alleged FDCPA violation. The Court comes to this conclusion in light of the Fifth Circuit's repeated affirmation post-*TransUnion* that allegations of emotional distress in the FDCPA context are a separate injury sufficient to confer standing. *See Perez*, 45 F.4th at 821; *see also Calogero*, 95 F.4th at 958. This conclusion is further supported by Patton's

7

pro se status that requires the Court to hold her to a less stringent pleading standard than parties represented by counsel. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

The Court comes to this conclusion despite the Seventh Circuit's non-binding decision in *Pierre*, declining jurisdiction for an FDCPA claim. For one thing, the letter at issue *Pierre*, in contrast to the present case, explicitly informed the plaintiff about limitations and alleviated any concern about a lawsuit with the following language:

> The law limits how long you can be sued on a debt. Because of the age of your debt, we will not sue you for it, we will not report it to any credit reporting agency, and payment or non-payment of this debt will not affect your credit score.

*Pierre*, 29 F.4th at 937. For another, the plaintiff in *Pierre* alleged harm based on "confusion" "as to whether she could be sued for the debt" and "worry" in the form of "emotional distress arising from her concern about being sued for the debt." *Id.* at 937-39. The Court held that mere "confusion" and "worry" are insufficient to confer standing. *Id.* at 939.

The present case is distinguishable from *Pierre*. Here, ProCollect failed to disclose that the debt at issue is time-barred and failed to state that legal action wasn't being contemplated. Also, Patton alleges more here than mere worry and confusion. Rather, Patton alleges she experienced "emotional distress, anxiety, fear, embarrassment, and mental anguish." Am. Compl. ¶ 6. The harm alleged therefore is more significant than that alleged in *Pierre*, especially given Patton's pro se status and the contents of the letter.

ProCollect changes course in its Reply. There it argues for the first time that the primary issue with Patton's purported injury is traceability, which is to say Patton's alleged injury isn't "fairly traceable to the challenged conduct" because ProCollect's letter didn't violate the FDCPA. *See* Reply at 3. According to this merits-begging argument, "[t]he letter was limited to Plaintiff's factual owing of the debt, which she does not deny, and was not false or misleading, as it only

responded to Plaintiff's request for validation of the debt." *Id.* at 3-4. Patton's "alleged emotional distress," the argument continues, "is not distinguishable from the distress she likely felt about being confronted with a debt that she factually owed." *Id.* at 3-4. The Court is not convinced.

ProCollect's attack on whether the letter was indeed misleading conflates the merits of the FDCPA claim with the jurisdictional issue. While no presumptive truthfulness attaches to Patton's allegations in the context of a Rule 12(b)(1) motion, the Court need not resolve the entire case at the motion-to-dismiss stage. Ultimately, "a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *See Ramming*, 281 F.3d at 161 (citation omitted).

The Court has reviewed the letter in question. ProCollect's characterization of the letter is unconvincing because the letter, on a fair reading, is potentially misleading. It's true that the "letter did not threaten or mention any possible legal action," at least not explicitly. *See* Reply at 3. But it also didn't disavow further legal action. The letter, moreover, requested payment of a time-barred debt, stating "[t]his is an attempt to collect a debt." *See* Dkt. No. 26 at 13. And the letter didn't mention that "partial payment or settlement that could have revived ProCollect's right to pursue legal action for the debt." *See* Reply at 3. At the same time, it advised Patton that "[t]o avoid further collection efforts please forward payment in full by return mail immediately." *See* Dkt. No. 26. at 13. The letter is a far cry, for example, from the letter at issue in the Seventh Circuit's non-binding decision in *Pierre*. Patton—after reading the letter here requesting payment of a time-barred debt, not mentioning the time bar or consequences of partial payment, advising about potential future "collection efforts," and seeking payment "immediately"—could reasonably infer that if she failed to pay the debt, she could suffer significant financial harm or face legal

9

consequences. From there, it's hardly a stretch to conclude Patton suffered cognizable emotional harm.

Nor is the Court persuaded that Patton's alleged injury is identical to what she would have experienced had she received a candid, forthright debt-collection letter. Instead, Patton's alleged injury comes from the alleged emotional distress that is a foreseeable consequence of the letter's less-than-forthright statements and significant omissions.

In conclusion, in light of Patton's allegations in her Amended Complaint of "emotional distress, anxiety, fear, embarrassment, and mental anguish," *see* Am. Compl. ¶ 6, the Fifth Circuit's recognition of emotional distress as a separate injury sufficient to confer standing, and Patton proceeding pro se, the Court recommends that the Motion to Dismiss should be denied.

## Conclusion and Recommendation

For the reasons discussed above, it is recommended that Defendant's Motion to Dismiss for Lack of Jurisdiction, Dkt. No. 33, be **DENIED WITHOUT PREJUDICE.**

## Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy by certified mail, return receipt requested, to those not registered. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Objections, responses, and replies must comply with the same page limits as other filings, unless otherwise excused by the district court's standing orders. *See* Rule CV-7. The objecting party shall file the objections with the clerk of the court, and serve the objections on all other parties. A party filing objections

must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusory, or general objections. A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Acuña v. Brown & Root*, *Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to timely file written objections to the proposed findings, conclusions, and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**IT IS SO ORDERED**.

**SIGNED** this 24th day of February, 2026.

_____

RICHARD B. FARRER
UNITED STATES MAGISTRATE JUDGE

11